LINDA SCHLEUTER, APPELLANT, V. BOB R. MCCUISTON
ET AL., APPELLEES.

277 N. W. 2d 667

Filed April 17, 1979. No. 42116.

Walker, Luckey, Sipple & Hansen and Mark M. Sipple, for appellant.

Joseph A. Shaughnessy, for appellees.

Heard before KRIVOSHA, C. J., MCCOWN, CLINTON, and HASTINGS, JJ., and KELLY, L. W., JR., District Judge.

CLINTON, J.

The plaintiff, Linda Tucker Schleuter, appeals from the dismissal of her petition for a writ of habeas corpus. The petition alleges Lucille and Bob R. McCuiston are unlawfully and forcibly detaining

Andy Tucker, a minor child and the son of Linda Schleuter. For reasons herein indicated, we do not reach the issue of the child's best interests. However, a summary of the events leading up to this appeal is necessary to an understanding of our holding.

Andy was born September 27, 1972. Lucille McCuiston is his paternal grandmother and Bob R. McCuiston is his stepgrandfather. Andy has an older sister, Amy, whose custody is not at issue in these proceedings.

Nebraska courts have been involved in the question of who should have custody of Andy since June of 1973. At that time, Delbert Tucker filed a petition in the District Court for Platte County, Nebraska, seeking a divorce from Linda Tucker and requesting custody of the two children of their marriage. Linda Tucker filed a cross-petition requesting custody of the children. On December 18, 1973, the District Court entered an order dissolving the marriage and granting physical custody of the children to Linda Tucker and legal custody to the Platte County division of public welfare.

The children had been living with the McCuistons while the divorce was pending. The plaintiff took custody of them on or about December 14, 1973. On about December 26 of that year, she asked the McCuistons to take care of the children until she and Tom Schleuter, her present husband, could marry and settle down. This the McCuistons agreed to do.

On January 4, 1974, the District Court, having been advised by the Platte County division of public welfare that plaintiff no longer had physical custody of the children, placed physical and legal custody of the children in the Platte County division of public welfare and ordered it to take steps to place the children in a foster home. The McCuistons were eventually designated as foster parents.

During 1974, plaintiff traveled with Tom Schleuter, who was a truck driver, for about 6 months. In July,

they married and settled in Colorado. Later that year, the plaintiff began proceedings to regain custody of the children. After a hearing, the District Court for Platte County awarded custody to plaintiff, effective December 27, 1974, subject to supervision by the Laramie County, Colorado, welfare department. This order has never been amended or revoked.

With the aid of police, the plaintiff took custody of the children on December 27, 1974. Amy adapted well to the change in custody, but Andy, who was 2 years old by then, did not. He would not speak to his mother and seemed frightened of her and generally exhibited withdrawn and abnormally infantile behavior.

In January of 1975, the McCuistons made a brief visit to plaintiff's home during a trip to a hospital in Colorado. Some time during that trip, plaintiff asked the McCuistons to take Andy back with them and Andy returned to Nebraska with the McCuistons in late January 1975. The McCuistons claim the arrangement was to be permanent, while plaintiff asserts it was intended to provide an adjustment period for Andy.

In April 1975, the McCuistons attempted to persuade plaintiff to relinquish her parental rights to Andy. Delbert Tucker, at some point, had already relinquished custody of Andy to the McCuistons. On April 17, 1975, the county attorney of Lincoln County, Nebraska, requested and obtained an order from the county court temporarily placing Andy in the care and custody of Lincoln County welfare with Andy to remain in the McCuiston home.

In March 1976, the county attorney petitioned the Lincoln county court to terminate plaintiff's parental rights on grounds of neglect and abandonment. Through her attorney, plaintiff filed a special appearance and a plea in abatement protesting jurisdiction on the grounds of defective service of

process and that exclusive jurisdiction over Andy's custody was already vested in the District Court for Platte County.

A hearing was eventually scheduled for September 30, 1976. In a motion filed September 23, 1976, plaintiff's attorney requested leave to withdraw and moved a continuance to enable plaintiff to secure other counsel. The withdrawal was permitted, but the continuance was not granted. Plaintiff appeared at the hearing and stated she would represent herself. During the hearing, she cross-examined witnesses and testified on her own behalf. After the hearing, the court determined Andy was neglected within the meaning of section 43-202(2)(b) and (c), R. S. Supp., 1976, and set a dispositional hearing for November 2, 1976.

Plaintiff again appeared on her own behalf at the dispositional hearing. At the hearing, the court found the McCuistons were Andy's psychological parents, and it was in Andy's best interests to remain with them, but Andy might need his natural mother at some point and plaintiff's parental rights would therefore not be terminated. Andy was placed in the McCuistons' permanent care and custody and plaintiff was allowed visitation.

At the close of the dispositional hearing, the court informed plaintiff she still had a right to be represented by an attorney and had a right to appeal. Plaintiff asked, "How soon can I bring it back into court?" The court replied, "As soon as you file an appeal."

On November 15, 1976, an attorney entered an appearance on plaintiff's behalf and filed a notice of appeal. On January 4, 1977, that attorney also moved for permission to withdraw from the case. On January 7, 1977, Andy's guardian ad litem filed a motion to quash the proceedings on grounds the notice of appeal was not timely filed, the notice of appeal was not served on the guardian ad litem or the

minor child, no bond or undertaking was posted, and no transcript or bill of exceptions was filed. On January 31, 1977, the District Court granted both motions. No appeal was taken from this order.

In November of 1977, plaintiff brought the habeas corpus action, the dismissal of which is appealed from in this case. At the hearing on the McCuistons' demurrer and motion to dismiss, all the records of the above-described proceedings were introduced as exhibits. At the close of the hearing, the court stated a habeas corpus action was not a substitute for an appeal from the county court action and sustained the motion to dismiss. We affirm.

Plaintiff urges the writ of habeas corpus should have been granted because the county court did not have jurisdiction to award custody of Andy to the McCuistons. Plaintiff apparently claims the county court did not have jurisdiction over her person and clearly asserts the county court did not have jurisdiction over the subject matter because continuing sole and exclusive jurisdiction of matters pertaining to Andy's custody was vested in the District Court for Platte County.

The assertion that the county court did not have jurisdiction over plaintiff's person is patently without merit. Plaintiff's argument that she should not be held to have waived any defects in jurisdiction over her person by virtue of her "mere appearance" at the county court hearing overlooks the fact that any defect in jurisdiction over plaintiff's person was waived when the plea in abatement, alleging the county court did not have jurisdiction over Andy's custody, was filed: "An appearance for the purpose of objecting to the jurisdiction of the court of the subject matter of the action, whether by motion or formal pleading, is a waiver of all objections to the jurisdiction of the court over the person of defendant, whether the defendant intended such waiver or not." State ex rel. Long v. Westover, 107 Neb. 593,

186 N. W. 998; Perrine v. Knights Templar's & Masons' Life Indemnity Co., 71 Neb. 267, 98 N. W. 841.

The argument that the county court did not have jurisdiction over the subject of Andy's custody requires more extended discussion. This court has held habeas corpus is a proper proceeding to determine the right to custody of a minor child. Green v. Green, 178 Neb. 207, 132 N. W. 2d 380; In re Application of Schwartzkopf, 149 Neb. 460, 31 N. W. 2d 294. However, the writ of habeas corpus is not a corrective remedy and is not a substitute for appeal or proceedings in error. In re Application of Schwartzkopf, *supra*. Thus, where the question of a child's custody has been determined in a prior proceeding by a court of competent jurisdiction, that disposition will control and cannot be disregarded in subsequent habeas corpus proceedings involving the same parties. Barnes v. Morash, 156 Neb. 721, 57 N. W. 2d 783; State ex rel. Wookey v. Elifritz, 100 Neb. 320, 160 N. W. 113; 39 Am. Jur. 2d, Habeas Corpus, §§ 92 & 93, pp. 244-45.

Although the writ of habeas corpus may not be used to unsettle valid legal proceedings, it is always a proper remedy where a person entitled to custody of a child has been deprived of that custody by reason of a void judgment. Hanson v. Hanson, 150 Neb. 337, 34 N. W. 2d 388. Plaintiff's contention that the county court lacked jurisdiction of Andy's custody, if valid, would entitle her to prevail on this appeal for a court which lacks jurisdiction of the subject matter may not obtain jurisdiction even by consent of the parties. Ostler v. City of Omaha, 179 Neb. 515, 138 N. W. 2d 826.

Plaintiff points to ambiguities in the statutes defining the jurisdiction of the juvenile court and those defining the jurisdiction of the District Court in divorce proceedings. In pertinent part, the statutes in effect at the time of the termination of parental

rights proceedings were as follows: "Juvenile court shall mean . . . the county court sitting as a juvenile court . . . . Nothing in this act shall be construed to deprive the district courts of their . . . chancery jurisdiction . . . ." § 43-201(4), R. S. Supp., 1976 (Laws 1975, L.B. 288).

"The juvenile court in each county, . . . shall have jurisdiction as follows: . . . (2) Exclusive original jurisdiction as to any child under the age of eighteen years (a) who is abandoned by his parent, guardian, or custodian; (b) who lacks proper parental care by reason of the fault or habits of his parent, guardian, or custodian; (c) whose parent, guardian, or custodian neglects or refuses to provide proper or necessary subsistence, education, or other care necessary for the health, morals, or well-being of such child . . . ." § 43-202, R. S. Supp., 1976 (Laws 1975, L.B. 288).

"When dissolution of a marriage or legal separation is decreed, the court may include such orders in relation to any minor children and their maintenance as shall be justified, including placing the minor children in court custody if their welfare so requires." § 42-364, R. S. Supp., 1976 (Laws 1974, L.B. 1015).

"All proceedings under sections 42-347 to 42-379 shall be brought in the district court of the county in which one of the parties reside. Proceedings *may* be transferred to a separate juvenile court which has acquired jurisdiction pursuant to section 43-230." (Emphasis supplied.) § 42-348, R. R. S. 1943.

The issue raised by plaintiff is whether the "exclusive original jurisdiction" given to the county court sitting as a juvenile court is diminished by sections 43-201 and 42-364, R. S. Supp., 1976, and section 42-348, R. R. S. 1943, to concurrent jurisdiction where the child's custody is the subject of a preexisting District Court order issued pursuant to divorce proceedings. If so, where jurisdiction has previously

been assumed by the District Court, the county court might not have authority to interfere with the exercise of that jurisdiction in a collateral proceeding, and any further proceedings concerning the custody and maintenance of the minor child would necessarily be brought in the District Court where the decree was rendered. See In re Estate of Rusch, 89 Neb. 265, 131 N. W. 209.

It is possible to imagine situations, such as when the juvenile court proceedings are part of a continuing custody battle between the parties to the divorce proceedings, where plaintiff's argument should prevail and the limiting language of section 43-201, R. S. Supp., 1976, should apply. However, section 43-201 does not apply under the circumstances present in this case for at least two compelling reasons.

First, the county court decree was rendered pursuant to a petition filed by the county attorney as provided by section 43-205, R. S. Supp., 1978. Where the county attorney, as a representative of the state, determines that it is necessary to act to protect a child in the county, filing a petition in county court is the only procedure available to him. To hold that the county court could not act whenever a District Court has previously determined custody in the course of divorce proceedings would be to frustrate the exercise of the state's power under sections 43-201 through 43-218, R. S. Supp., 1978.

Second, this was a proceeding to terminate parental rights. At the time of these proceedings, a termination of parental rights could only be decreed by a juvenile court in a proceeding brought for that purpose. Sosso v. Sosso, 196 Neb. 242, 242 N. W. 2d 621. It is true that parental rights were in fact not terminated in the county court proceeding. However, if we were to hold that the county court deprived itself of its jurisdiction by electing not to terminate parental rights after a full hearing on the

merits, we would be basing the court's jurisdiction on the outcome of the proceeding, a result which would be patently absurd.

We hold section 43-201, R. S. Supp., 1976, did not limit the county court's jurisdiction to determine the custody of a minor child whose custody was subject to a preexisting District Court order where the county court's jurisdiction was invoked by the county attorney acting to protect the child pursuant to section 43-205, R. S. Supp., 1978. Thus, the county court decree was not void for lack of jurisdiction over the subject matter and the petition for a writ of habeas corpus was properly dismissed.

AFFIRMED.