IN RE INTEREST OF GOLDFADEN.
STATE OF NEBRASKA, APPELLEE, V.
BARBARA GOLDFADEN, APPELLANT.

302 N.W.2d 368

Filed February 20, 1981. No. 43159.

George H. Moyer, Jr., of Moyer, Moyer & Egley and Wilbur L. Johnson of Johnson & Skorupa for appellant.

Paul Schumacher, Platte County Attorney, for appellee State of Nebraska.

Clay M. Rogers of Erickson, Sederstrom, Leigh, Johnson, Koukol & Fortune, P.C., for James Goldfaden.

Mark M. Sipple of Luckey, Sipple & Hansen, guardian ad litem for Michael and Lisa Goldfaden.

Heard before KRIVOSHA, C.J., BOSLAUGH, MCCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

HASTINGS, J.

This action was commenced by the county attorney of Platte County pursuant to Neb. Rev. Stat. § 43-202(2) (b) and (c) (Reissue 1978) on behalf of two minor children, Michael James and Lisa Ann Goldfaden. The mother, Barbara Goldfaden, who had custody by reason of a marriage dissolution decree of the District Court for Douglas County, has appealed from an order placing custody of the children in their father, her ex-husband, James Goldfaden, subject to reasonable visitation privileges in herself and the maternal grandfather. The appellant assigns the following as error: (1) The county court erred in proceeding with an adjudication even though the record reflected that the children were wards of the District Court for Douglas County; and (2) The county court erred in granting custody of the children to the father. We affirm the District Court order which approved the county court adjudication.

On December 13, 1978, the Platte County attorney filed a petition in the county court of Platte County, alleging that Michael and Lisa were neglected children, as defined in § 43-202(2) (b) and (c). The petition alleged that the children lacked proper parental care by reason of the fault or habits of their mother, Barbara Goldfaden. The petition further alleged that after a preliminary hearing before the Platte County Mental Health Board on December 12, 1978, Barbara was determined to be dangerously mentally ill, and that the children were in danger because of the acts of violence by Barbara upon her father in the presence of the children.

The children were placed in the custody of the Platte County Department of Public Welfare under the supervision of Multi-County Service Unit 143, and the court appointed an attorney and guardian ad

litem to represent them. Barbara was admitted to the Norfolk Regional Center, where she was diagnosed as suffering from alcohol addiction and a passive-aggressive personality with hysterical and inadequate features. It was also later determined that she was addicted to valium.

On December 16, 1978, the children's father, James Goldfaden, filed a motion in the county court of Platte County, alleging that he was a person more fit and proper than foster care to have possession during the pendency of the proceedings. He further stated that he intended to file an application for modification of the divorce decree in the District Court for Douglas County to obtain custody of the children. On December 26, 1978, the county court entered an order finding Barbara to be in the Norfolk Regional Center, continued the adjudication hearing, ordered James to pay $190 per month per child as child support, and continued custody with the Platte County Department of Public Welfare.

On January 10, 1979, Barbara entered a general appearance in the Platte County Court by and through her attorney, and on March 26, 1979, she appeared personally and admitted the allegations contained in the juvenile petition. Based on that admission, the court found Michael and Lisa to be children as defined by § 43-202(2) (b) and (c), and set the matter for a final dispositional hearing on May 30, 1979. Pending the final dispositional hearing, the court ordered custody to remain in the Platte County Department of Public Welfare, granted both parents visitation privileges, and ordered Barbara to continue treatment programs which were in progress.

The adjudication hearing was held on May 30, 1979, in which Dr. Roger Cutshall, staff psychiatrist at the Norfolk Regional Center, was called to testify on Barbara's behalf. He stated that Barbara had been released from the hospital on April 4, 1979, as improved, but with an agreement requiring her to

continue on prescribed medications, to return for periodic medication checks, to abstain from the use of any alcoholic beverages, and to allow outpatient visits in her home. The doctor testified that Barbara was making satisfactory progress, and in his opinion she was not at that time dangerous to her children since the main source of the problem was alcohol, and as long as she remained sober the problem would probably disappear. On examination by the court, Dr. Cutshall testified that it was very important that she continue the treatment program because without it she would probably return to drinking. The doctor further stated that he would recommend the outpatient treatment for 6 months to a year to really see if she was functioning or not.

At the conclusion of the hearing the court determined that the best interests of the children would be to place them in the custody of their father under the supervision of Lutheran Family and Social Service of Nebraska and Multi-County Service Unit 143. The court granted Barbara twice-a-month visitation privileges. The court also retained jurisdiction, requiring Multi-County Service to monitor the placement of the children as well as the progress made by Barbara and to make periodic reports to the court. A review was scheduled for approximately 1 year in the future, to be heard on June 2, 1980. Barbara appealed the county court decision to the District Court for Platte County, which was subsequently affirmed. This appeal followed.

Appellant's first assignment of error is that the county court erred in proceeding with an adjudication even though the record reflected that the children were wards of the District Court for Douglas County, pursuant to the divorce decree of the parties. Barbara agrees that the county court had jurisdiction through the juvenile statutes to detain the children because of lack of parental care. However, she insists that once the emergency ended, the county court no longer

had original jurisdiction to determine the custody of the children. She further asserts that once the county court of Platte County had notice that Michael and Lisa were wards of the District Court for Douglas County, the county court should have stayed further proceedings and remanded the parties to the District Court to determine custody.

The juvenile court in each county has "(2) Exclusive original jurisdiction as to any child under the age of eighteen years . . . (b) who lacks proper parental care by reason of the fault or habits of his parent, guardian, or custodian; (c) whose parent, guardian, or custodian neglects or refuses to provide proper or necessary subsistence, education, or other care necessary for the health, morals, or well-being of such child . . . ." § 43-202(2)(b) and (c). Further, the jurisdiction of the juvenile court continues over a child brought before the court or committed under the act, "and the court shall have power to order a change in the custody or care of such child, if at any time it is made to appear to the court that it would be for the best interests of the child to make such change." Neb. Rev. Stat. § 43-209 (Reissue 1978).

Appellant calls our attention to Neb. Rev. Stat. § 43-201(4) (Reissue 1978), which states in pertinent part: "Nothing in this act shall be construed to deprive the district courts of their habeas corpus, common law, or chancery jurisdiction or jurisdiction acquired in an action for divorce, legal separation, or annulment . . . ." The issue raised was considered by this court in *Schleuter v. McCuiston*, 203 Neb. 101, 277 N.W.2d 667 (1979). Is the exclusive original jurisdiction given to the county court sitting as a juvenile court diminished by § 43-201, where the child's custody is the subject of a preexisting District Court order issued pursuant to divorce proceedings? In *Schleuter* we answered the question in the negative for the following reasons:

"First, the county court decree was rendered pursuant to a petition filed by the county attorney as provided by section 43-205, R. S. Supp., 1978. Where the county attorney, as a representative of the state, determines that it is necessary to act to protect a child in the county, filing a petition in county court is the only procedure available to him. To hold that the county court could not act whenever a District Court has previously determined custody in the course of divorce proceedings would be to frustrate the exercise of the state's power under sections 43-201 through 43-218, R. S. Supp., 1978.

"Second, this was a proceeding to terminate parental rights. . . . It is true that parental rights were in fact not terminated in the county court proceeding. However, if we were to hold that the county court deprived itself of its jurisdiction by electing not to terminate parental rights after a full hearing on the merits, we would be basing the court's jurisdiction on the outcome of the proceeding, a result which would be patently absurd.

"We hold section 43-201, R. S. Supp., 1976, did not limit the county court's jurisdiction to determine the custody of a minor child whose custody was subject to a preexisting District Court order where the county court's jurisdiction was invoked by the county attorney acting to protect the child pursuant to section 43-205, R. S. Supp., 1978." *Schleuter* at 108-09, 277 N.W.2d at 671.

The reasoning in *Schleuter* is sound, and we decline the invitation to abandon it. The juvenile court jurisdiction as exercised pursuant to the juvenile statutes is to some extent exclusive and the proceeding brought by the county attorney is not just another custody proceeding. "Both the divorce court and the juvenile court are concerned on a primary basis with the welfare of the child, but, while their functions overlap, the basis of their jurisdiction and the scope of their powers differ. The divorce court is concerned with the legal custody of the children as between the parents.

The juvenile court can intervene between the parent and the child only if the child's condition requires the state to use its power to protect the welfare of the child. The circumstances of the child must come within the statute." *State ex rel Juv. Dept. v. Christy*, 7 Or. App. 608, 616, 492 P.2d 476, 479 (1972).

The juvenile court is not depriving the District Court of its jurisdiction acquired in the divorce action. It is merely exercising its exclusive original jurisdiction to intervene for the protection, welfare, and safety of the child. Once this jurisdiction has been invoked, the court has the authority to order a change in custody where necessary, if in the best interests of the child. § 43-209.

The appellant further assigns as error the award of custody to the father. We review the case de novo, giving due regard to the trial court which observed the parties and the witnesses and their manner of testifying. A custody order will not ordinarily be disturbed unless there is a clear abuse of discretion or it is clearly against the weight of the evidence. *Curfman v. Curfman*, 207 Neb. 1, 295 N.W.2d 299 (1980).

The evidence indicates that Michael has been experiencing adjustment problems due to the frequent shifting of family caretakers, producing in him a sense of insecurity and uncertainty. This has resulted in an increase of immature behavior at school and at home. A psychologist who evaluated Michael recommended that he be placed in a settled and secure home. The Multi-County Service Unit 143 caseworker, after doing a complete evaluation of both the homes and living situations of the parents, recommended placement of the children with the father. The same recommendation was made by the guardian ad litem. The evidence fully supports placement of the children with the father, James Goldfaden, and that decision will not be disturbed. The judgment of the District Court for Platte County is affirmed.

AFFIRMED.